# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No.:

**SHAINA REFFEL, as the Personal Representative of the ESTATE OF JUSTON REFFEL, deceased,**
**SHAINA REFFEL, in her personal capacity, and**
**TRACY REFFEL, as the Guardian of XJ, the Minor Child of JUSTON REFFEL,**

    Plaintiffs,

v.

**OFFICER ERIK HERNANDEZ, in his individual capacity, and**
**OFFICER SAM JOHNSON, in his individual capacity,**

    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

**COME NOW**, Plaintiffs Shaina Reffel, as the Personal Representative of the Estate of Juston Reffel, and in her personal capacity, and Tracy Reffel as Guardian of XJ, the minor child of Juston Reffel, deceased, by and through counsel, Baumgartner Law, L.L.C., and respectfully submit this Complaint and Jury Demand against Defendants Erik Hernandez and Sam Johnson, and allege the following:

## JURISDICTION AND VENUE

1.    This action is brought pursuant to 42 U.S.C. §1983, §1988, and the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article II, Section 7 of the Colorado Constitution, Colorado Revised Statutes §13-21-131; §13-21-201 et seq., §24-10-118(2)(a), and

Colorado Common Law. Jurisdiction is founded upon 28 U.S.C. §1331 (federal question), §1343(a)(3) and (4) (civil rights), §1367(a) (supplemental jurisdiction), and the aforementioned statutory and constitutional provisions.

2.     Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because Defendants all reside in Colorado, and because the events giving rise to this action occurred in Colorado.

## PARTIES

3.     Juston Reffel ("Juston Reffel" or "Mr. Reffel"), deceased, was at all relevant times a citizen of the State of Colorado, residing in Weld County, Colorado.

4.     Tracy Reffel is the mother of Juston Reffel, deceased, and the legal guardian, and next friend of Mr. Reffel's minor son, XJ. Tracy Reffel is and was at all relevant times a citizen of the State of Colorado, residing in Weld County, Colorado.

5.     XJ is the minor child of Juston Reffel.  XJ is and was at all relevant times a citizen of the State of Colorado, residing in Weld County, Colorado.

6.     Shaina Reffel was at all times relevant, the husband of Juston Reffel, and a citizen of the State of Colorado.

7.     Defendant Officer Erik Hernandez is or was at all times relevant a citizen of the State of Colorado, employed by the LaSalle Police Department.

8.     Defendant Officer Sam Johnson is or was at all times relevant a citizen of the State of Colorado, employed by the LaSalle Police Department.

## GENERAL ALLEGATIONS

### Background Facts

9.      Plaintiffs incorporate by reference herein all preceding allegations set forth in this Complaint.

10.     On May 3, 2023, Juston Reffel was shot and killed by Defendant Erik Hernandez who was acting in his capacity as a law enforcement officer, employed by the LaSalle, Colorado Police Department.

11.     Defendant Hernandez's actions were taken as a direct and proximate result of Defendant Johnson's initiation of the illegal encounter and at Defendant Johnson's direction to Defendant Hernandez, as his trainee officer to shoot Mr. Reffel.

12.     At the time Mr. Reffel was killed, Defendant Hernandez had been employed as a LaSalle Police Officer for approximately three days.

13.     At the time Mr. Reffel was killed, Defendant Johnson was acting as Defendant Hernandez's supervising and training officer.

14.     On January 27, 2025, in Weld County Case Number 23CR983, Defendant Hernandez pleaded guilty to Manslaughter, a class four felony for feloniously and recklessly causing the death of Juston Reffel.

15.     On April 25, 2025, Mr. Hernandez was sentenced to six years in the Colorado Department of Corrections.

**Specific Factual Allegations**

16.     On May 3, 2023, at about 5:00 p.m. Juston Reffel arrived with his wife, Shaina Reffel, and his son (XJ), at the LaSalle, Colorado Family Dollar Store to do some shopping. Mr. Reffel drove his family to the store in his white Dodge Magnum, which he parked in the store parking lot. Mr. Reffel backed his car into the parking spot, and when he did so, he took up part of two parking spaces in the private parking lot of the Family Dollar.

17. After parking, the Reffel family entered the store and began shopping.

18. Only a couple minutes after Mr. Reffel arrived and entered the Family Dollar Store, LaSalle police officers Defendant Johnson and the Defendant Hernandez pulled into the parking lot. The events that followed were captured on Defendant Johnson's body worn camera and Defendant Hernandez's body worn camera, attached hereto as **Exhibits 1 and 2**, respectively, which are submitted herewith as conventionally filed exhibits.

19. Defendant Johnson was supervising and training Defendant Hernandez, who was on his third day of employment with the LaSalle police department, although Defendant Hernandez had previously worked for other police departments.

20. When they arrived, Defendant Johnson and Defendant Hernandez remarked that the car had a new spray-paint paint job.

21. Defendant Johnson, acting in the role of a supervising and training officer, asked Defendant Hernandez what "are your next steps?" Defendant Johnson was testing his trainee on the appropriate conduct for a LaSalle police officer.

22. Defendant Hernandez replied that they could (1) tow the vehicle or (2) "if we wanted to be nice leave a seventy-two-hour tag on it."

23. Defendant Johnson then said to Defendant Hernandez, "How about this. Pull the car up right in front of it and let's go see if they're inside?" Both Defendant Johnson and Defendant Hernandez laughed and then Defendant Johnson pulled his patrol car in front of the Dodge Magnum, perpendicular to it, but several feet in front of its front bumper (again, the Dodge had been backed into the space.)

24. Defendant Johnson told Defendant Hernandez that "A roller paint job on a car, with that headlight, that's suspicious. You have every reason to question somebody about that because that's against DMV."

25. So, despite Defendant Hernandez expressing that he believed that the proper course would be to tow the vehicle, or perhaps leave a tag on the vehicle, Defendant Johnson directed Defendant Hernandez to initiate a non-consensual contact, or a detention of the vehicle owner, despite having no articulable reasonable suspicion of any crime, or probable cause that any crime had been committed.

26. "Department of Motor Vehicles" is not a law or set of codes, but an agency.  No reasonable officer after receiving POST certification could believe that a state agency such as the DMV is in and of itself a set of laws or codes.

27. At no point during or after, the killing of Juston Reffel, did Defendant Johnson specify what legal codes he believes were violated outside of a vehicle being double parked and having expired registration.

28. Never once did Defendant Johnson or Defendant Hernandez articulate a reasonable suspicion that the owner or driver of the Dodge Magnum committed any crime except for something "against DMV."

29. At about 5:08 p.m. Defendant Johnson and the Defendant Hernandez entered the Family Dollar Store and began inquiring about who the owner of the vehicle might have been.

30. About 1 minute after Defendant Johnson and Defendant Hernandez began asking Family Dollar staff about the vehicle, Mr. Reffel exited the store and ran to his vehicle, the white Dodge Magnum.

31. Defendant Johnson and Defendant Hernandez chased Mr. Reffel and caught up to him as he had just entered the driver side door of his vehicle and started the ignition.

32. Defendant Johnson and Defendant Hernandez approached the car with their pistols drawn – Defendant Johnson pointing his gun at Mr. Reffel through the front passenger window, and Defendant Hernandez through the front driver's side window.

33. Defendant Johnson screamed, "Do it and I'll fucking shoot you! Get out of the car! I will fucking shoot you!"

34. This was a clear warning that if Mr. Reffel attempted to drive away, Defendant Johnson would shoot and kill him.

35. At all times, Defendant Johnson was about five feet away from the passenger side of the vehicle, and *never* in the path of travel of the vehicle.

36. Defendant Hernandez, following the lead of his training officer, Defendant Johnson, positioned himself on the other side of the vehicle, about five feet away from the driver's side door, and also *never* in the path of travel of the vehicle, and aimed his pistol at Mr. Reffel through the driver's side door.

37. It is unknown whether Mr. Reffel heard or understood Defendant Johnson's yelling. Defendant Johnson never articulated clear orders.

38. Mr. Reffel briefly backed up the car by about 2 feet and then drove forward and to the left, around the police car parked several feet in front of him.

39. Again, at no point were either of the officers in any possible path of travel of the vehicle as it was positioned.

40. Mr. Reffel was not armed and neither officer believed that they were in physical danger from Mr. Reffel.

41. Mr. Reffel was intentionally trying to avoid harming either officer, did not create any skid-marks, nor did he drive away at an unreasonable speed in a parking lot. Neither Defendant Johnson nor Defendant Hernandez were ever in the path of the car, nor were they in any immediate or imminent danger of being hit or run over by Mr. Reffel.

42. As Mr. Reffel was pulling forward and away from Defendant Johnson and Defendant Hernandez, Defendant Hernandez, who was never in immediate or imminent danger of being hit by the vehicle, fired three shots into the driver's side door – that he was directly parallel with – and one shot through the driver side window.

43. Mr. Reffel was struck in the upper arm and the bullet traveled through his upper torso.

44. Mr. Reffel managed to drive out of the Family Dollar Store parking lot, made a left turn, and then the vehicle crashed because Mr. Reffel succumbed to his injuries, his lungs filling with blood, causing Mr. Reffel to drown in his own blood.

45. After firing shots, Defendant Johnson and Defendant Hernandez pointed their weapons at Shaina Reffel's head and yelled for her to get down on the ground. Defendant Hernandez yelled, "If you move, I will shoot you!"

46. Mrs. Reffel was terrified and said back, "I didn't do anything" while getting down on her stomach and putting her hands out. Defendant Johnson and Defendant Hernandez put Mrs. Reffel into handcuffs.

47. After being placed into handcuffs Mrs. Reffel asked the Defendants why they shot her husband; the Defendants answered with a blatant lie: "He [Juston Reffel] almost tried to run me over. What do you think that was gonna happen?"

7

48. All of the body camera footage shows that at no point did Mr. Reffel try to run over the Defendants or that the Defendants were ever in any danger of death or serious bodily injury from the vehicle.

49. Although Defendant Johnson did not shoot Mr. Reffel, he nevertheless set in motion a series of events that he knew or reasonably should have known would cause Defendant Hernandez to deprive Mr. Reffel of his constitutional rights. Additionally, Defendant Johnson was a direct and integral participant in the constitutional violation. Defendant Johnson was the training officer and supervising officer on the scene. Defendant Johnson directed the non-consensual, illegal encounter between the Defendant Officers and Mr. Reffel, including, without limitation, the pursuit of Mr. Reffel and the excessive force of drawing and pointing firearms at Mr. Reffel. Defendant Johnson's actions in yelling, "Do it and I'll fucking shoot you! Get out of the car! I will fucking shoot you!" was a clear initiation of deadly force against Mr. Reffel and gave clear direction as a supervisor to his trainee, Defendant Hernandez, that Defendant Johnson not only acquiesced to the use of deadly force, but that deadly force was appropriate and expected by his subordinate trainee officer in that circumstance. In fact, Defendant Johnson told investigating officers that the only reason he did not shoot Mr. Reffel was because Defendant Hernandez was directly across from him.

50. The obvious and predictable result of Defendant Johnson's actions was that his trainee, Defendant Hernandez, followed his direction and used deadly force, shooting Mr. Reffel exactly as Defendant Johnson's active participation and supervision demanded.

51. Defendant Johnson's actions constitute more than mere acquiescence to Defendant Hernandez's shooting of Mr. Reffel, and more than just active participation in that shooting. Defendant Johnson's actions constitute clear direction by a supervising officer for each of the

above-detailed constitutional violations, up to and including the shooting of Mr. Reffel when Mr. Reffel drove away.

52. As such, Defendant Johnson was an integral participant in the violation of Mr. Reffel's constitutional rights.

53. Additionally, Defendant Johnson's actions constitute supervisory liability for the violation of Mr. Reffel's constitutional rights.

54. The Weld County District Attorney's Office charged Defendant Hernandez with second degree murder.

55. On January 27, 2025, in Weld County Case Number 23CR983, Defendant Hernandez pleaded guilty to Manslaughter, a class four felony for feloniously and recklessly causing the death of Juston Reffel.

56. The Weld County District Attorney stated at sentencing that the Defendant Officers had no reasonable suspicion to detain Mr. Reffel and that Mr. Reffel had every right to flee and not to have a consensual interaction with the Defendant Officers. The District Attorney also stated that if the Defendant Officers had arrested Mr. Reffel, that arrest would have been illegal.

57. At sentencing, the District Court Judge stated that he would hope that any reasonable person viewing the "horrific body worn camera" would realize that the actions were not legally justified, and that they were criminal actions.

58. The District Court Judge also excoriated Defendant Hernandez for his lack of accountability, and his repeated and changing statements made to attempt to justify the killing of Mr. Reffel.

59. Defendant Hernandez was sentenced to six years in the Colorado Department of Corrections (the maximum number of years for manslaughter) by the Weld County District Court.

9

## CLAIMS FOR RELIEF

60. Plaintiffs incorporate by reference herein all preceding allegations set forth in this Complaint.

61. The Fourth Amendment of the U.S. Constitution prohibits unreasonable or excessive use of force in connection with searches and seizures. While detaining, restraining and/or arresting a person, the Fourth Amendment protections only allow police officers to use the amount of force that is objectively reasonably necessary and proportionate to the danger presented under the circumstances.

62. Article II, Section 7 of the Colorado Constitution provides even greater protections against unreasonable and excessive force in connection with searches and seizures.

### FIRST CLAIM FOR RELIEF
**Violation of the Fourth Amendment of the United States Constitution**
*Unnecessary, Unreasonable, and Excessive/Deadly Force*
*(All Plaintiffs Against All Defendants In Their Individual Capacities)*

63. Plaintiffs incorporate by reference herein all preceding allegations set forth in this Complaint.

64. Juston Reffel was seized for purposes of the 4th Amendment to the United States Constitution when he was shot and killed by the Defendant Hernandez.

65. It is well established by United States Supreme Court and 10th Circuit Court of Appeals that using deadly force to prevent the escape of a person suspected of criminal conduct when there is no probable cause to believe the suspect poses an immediate threat of serious harm or death to the officers or others is unconstitutional under the Fourth Amendment. *Tennessee v. Garner*, 471, U.S. 1, 11-12 (1985), *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (citing *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009)).

66. On the date of the incident, it was clearly established that shooting a person in a vehicle through the side or rear compartments when there is no danger to officers or members of the public simply because the suspect does not stop is unconstitutional. *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir.2009), *Millsap v. Retana et al.*, 1:20-cv-01143-RBJ, *Order on MTN to Dismiss* (United States District Court of Colorado), *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (citing *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009)).

67. The factual circumstances in this matter are "on-point" with the factual circumstances in the cases cited above, particularly *Cordova* and *Reavis*. Specifically, Defendant Hernandez did not, and could not, have reasonably believed that he or Defendant Johnson were in danger while standing alongside of the subject vehicle and not possibly in its path of travel. Neither Defendant is entitled to qualified immunity.

68. Defendant Hernandez shot Juston Reffel while about 5 feet away from the driver's side door. The bullets went through the driver's side door and window and fatally struck Juston Reffel.

69. Although Defendant Johnson did not shoot Mr. Reffel, he nevertheless set in motion a series of events that he knew or reasonably should have known would cause Defendant Hernandez to deprive Mr. Reffel of his constitutional rights. Additionally, Defendant Johnson was a direct and integral participant in the constitutional violation. Defendant Johnson was the training officer and supervising officer on the scene. Defendant Johnson directed the non-consensual, illegal encounter between the Defendant Officers and Mr. Reffel, including, without limitation, the pursuit of Mr. Reffel and the excessive force of drawing and pointing firearms at Mr. Reffel. Defendant Johnson's actions in yelling, "Do it and I'll fucking shoot you! Get out of the car! I will fucking shoot you!" was a clear initiation of deadly force against Mr. Reffel and gave clear direction as a supervisor to his trainee, Defendant Hernandez, that Defendant Johnson not only acquiesced to the use of deadly

force, but that deadly force was appropriate and expected by his subordinate trainee officer in that circumstance. In fact, Defendant Johnson told investigating officers that the only reason he did not shoot Mr. Reffel was because Defendant Hernandez was directly across from him.

70. The obvious and predictable result of Defendant Johnson's actions was that his trainee, Defendant Hernandez, followed his direction and used deadly force, shooting Mr. Reffel exactly as Defendant Johnson's active participation and supervision demanded.

71. Defendant Johnson's actions constitute more than mere acquiescence to Defendant Hernandez's shooting of Mr. Reffel, and more than just active participation in that shooting. Defendant Johnson's actions constitute clear direction by a supervising officer for each of the above-detailed constitutional violations, up to and including the shooting of Mr. Reffel when Mr. Reffel drove away.

72. As such, Defendant Johnson was an integral participant in the violation of Mr. Reffel's constitutional rights.

73. Additionally, Defendant Johnson's actions constitute supervisory liability for the violation of Mr. Reffel's constitutional rights.

74. Neither Defendant Hernandez nor Defendant Johnson were ever in the pathway of Juston Reffel's vehicle at any time.

75. At the time Juston Reffel was shot, Defendant Hernandez and Defendant Johnson only had probable cause to believe Juston Reffel's Dodge Magnum was double parked and had expired registration – no other crimes had or have been alleged since the shooting.

76. As a direct, proximate, and foreseeable result of being shot by Defendant Hernandez, Juston Reffel died.

77. As a direct, proximate, and foreseeable result of the Defendant Officers' willful and

wanton conduct in shooting Juston Reffel, Shaina Reffel lost her husband, and XJ lost his father for the rest of his life, which has caused suffering, injuries, damages, and losses, including without limitation, the loss of companionship, loss of support (both emotionally and financially), pain, suffering, emotional distress, and extreme grief associated with the death and permanent loss of a husband and father.

## SECOND CLAIM FOR RELIEF
**Violation of the Fourth Amendment of the United States Constitution**
**Unnecessary, Unreasonable, and Excessive Force**
*(Plaintiff Shaina Reffel Against All Defendants In Their Individual Capacities)*

78. Plaintiffs incorporate by reference herein all preceding allegations set forth in this Complaint.

79. Shaina Reffel was seized for the purposes of the Fourth Amendment to the United States Constitution when the Defendant Officers pointed their guns at her head, told her they would shoot her if she moved, and then handcuffed her.

80. Mrs. Reffel had committed no crime whatsoever, and the Defendant Officers had no reasonable suspicion or probable cause to believe that Mrs. Reffel had committed any crime.

81. Mrs. Reffel was unarmed and clearly did not constitute any threat to either Defendant Officer.

82. As a direct and proximate result of the Defendant Officers' actions, Mrs. Reffel suffered a violation of her Fourth Amendment constitutional rights, physical injuries, and severe psychological injuries.

## THIRD CLAIM FOR RELIEF
**Violation of Article II of the Colorado Constitution**
**Resulting in the Wrongful Death of Juston Reffel**
**Pursuant to C.R.S. §13-21-131; C.R.S. §13-21-201 *et seq.*; C.R.S. §24-10-118(2)(a)**
*(All Plaintiffs Against All Defendants in Their Individual Capacities)*

83. Plaintiffs incorporate by reference herein all preceding allegations set forth in this Complaint.

13

84. Colorado law permits the heir of person whose death was caused by the wrongful conduct of another to maintain a civil action for wrongful death. *See* C.R.S. §13-21-201(1)(a)(IV).

85. At the time of the incident, Shaina Reffel was married to Juston Reffel.

86. X.J. is Mr. Reffel's only surviving child.

87. A police officer in Colorado who subjects a person to the deprivation of any individual rights secured by the bill of rights in Article II of Colorado's state constitution is liable to the injured party. *See* C.R.S. §13-21-131(1).

88. Article II, §3 of Colorado's constitution provides, "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness." Colo. Const. art. II, §3.

89. Article II, §7 of Colorado's constitution provides, "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; …" Colo. Const. art. II, §7.

90. Article II, §25 of Colorado's constitution provides, "No person shall be deprived of life, liberty or property, without due process of law." Colo. Const. art. II, §25.

91. As previously alleged, particularly in connection with the First Claim for Relief, Defendants used deadly force against Mr. Reffel under circumstances that did not warrant the use of such force because, among other things, Mr. Reffel was never a threat to either of the officers' safety. As almost identical to the fact pattern in *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020), Juston Reffel had maneuvered his vehicle past the officers before Defendant Hernandez fired. Defendant Hernandez shot Mr. Reffel through the driver's side window and door. At no time did Juston Reffel threaten the safety of either officer. By shooting Mr. Reffel under these

14

circumstances, Defendants deprived Mr. Reffel of his individual right to be secure in his person and home from unreasonable seizure in the form of excessive/deadly force. *See* Colo. Const. art. II, §7.

92. By shooting Mr. Reffel under these circumstances, Defendants deprived Mr. Reffel of his individual right to enjoy his life and his guaranteed liberties, his right to seek and obtain happiness, *see* Colo. Const. art. II, §3, his right to be free from excessive seizure, *see id.* §7 and his right to life itself, *see id.* §25.

93. Although Defendant Johnson did not shoot Mr. Reffel, he nevertheless set in motion a series of events that he knew or reasonably should have known would cause Defendant Hernandez to deprive Mr. Reffel of his constitutional rights. Additionally, Defendant Johnson was a direct and integral participant in the constitutional violation. Defendant Johnson was the training officer and supervising officer on the scene. Defendant Johnson directed the non-consensual, illegal encounter between the Defendant Officers and Mr. Reffel, including, without limitation, the pursuit of Mr. Reffel and the excessive force of drawing and pointing firearms at Mr. Reffel. Defendant Johnson's actions in yelling, "Do it and I'll fucking shoot you! Get out of the car! I will fucking shoot you!" was a clear initiation of deadly force against Mr. Reffel and gave clear direction as a supervisor to his trainee, Defendant Hernandez, that Defendant Johnson not only acquiesced to the use of deadly force, but that deadly force was appropriate and expected by his subordinate trainee officer in that circumstance. In fact, Defendant Johnson told investigating officers that the only reason he did not shoot Mr. Reffel was because Defendant Hernandez was directly across from him.

94. The obvious and predictable result of Defendant Johnson's actions was that his trainee, Defendant Hernandez, followed his direction and used deadly force, shooting Mr. Reffel exactly as Defendant Johnson's active participation and supervision demanded.

95. Defendant Johnson's actions constitute more than mere acquiescence to Defendant Hernandez's shooting of Mr. Reffel, and more than just active participation in that shooting. Defendant Johnson's actions constitute clear direction by a supervising officer for each of the above-detailed constitutional violations, up to and including the shooting of Mr. Reffel when Mr. Reffel drove away.

96. As such, Defendant Johnson was an integral participant in the violation of Mr. Reffel's rights.

97. Additionally, Defendant Johnson's actions constitute supervisory liability for the violation of Mr. Reffel's rights.

98. As a direct, proximate, and foreseeable result of the Defendant Officers' willful and wanton conduct, Juston Reffel died and was deprived of his individual rights secured by the Colorado Constitution as previously alleged.

99. As a direct, proximate, and foreseeable result of the Defendant Officers' willful and wanton conduct in shooting Juston Reffel, Shaina Reffel lost her husband, and XJ lost his father for the rest of his life, which has caused suffering, injuries, damages, and losses, including without limitation, the loss of companionship, loss of support (both emotionally and financially), pain, suffering, emotional distress, and extreme grief associated with the death and permanent loss of a husband and father.

**FOURTH CLAIM FOR RELIEF**
**Violation of Article II of the Colorado Constitution**
**Unnecessary, Unreasonable, and Excessive Force**
**Pursuant to C.R.S. §13-21-131**
*(Plaintiff Shaina Reffel Against All Defendants In Their Individual Capacities)*

100. Plaintiffs incorporate by reference herein all preceding allegations set forth in this Complaint.

101. Shaina Reffel was seized for the purposes of Article II of the Colorado Constitution when the Defendant Officers pointed their guns at her head, told her they would shoot her if she moved, and then handcuffed her.

102. Mrs. Reffel had committed no crime whatsoever, and the Defendant Officers had no reasonable suspicion or probable cause to believe that Mrs. Reffel had committed any crime.

103. Mrs. Reffel was unarmed and clearly did not constitute any threat to either Defendant Officer.

104. As a direct and proximate result of the Defendant Officers' actions, Mrs. Reffel suffered a violation of her Article II constitutional rights, physical injuries, and severe psychological injuries.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in their favor on their respective claims against Defendants jointly and/or severally as follows:

a) Compensatory damages in an amount that will fully and fairly compensate Plaintiffs for their injuries, damages and losses pursuant to 42 U.S.C. § 1983 and C.R.S. §13-21-131;
b) Punitive damages pursuant to federal and state law as punishment to deter against other commissions of future illegal conduct;
c) Pre and post judgment interest;
d) Attorney fees, expert witness fees, and all other costs for this action pursuant to 42 U.S.C. § 1988 and any other applicable federal or state law;
e) Any other relief the Court deems proper and just.

**PLAINTIFFS DEMAND TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 29th day of April 2025.

BAUMGARTNER LAW, L.L.C.

*s/ S. Birk Baumgartner*
S. Birk Baumgartner
730 17th Street, Suite 340

                                           Denver, CO 80202
                                           Phone: (303) 529-3476
                                           Fax: (720) 634-1018
                                           birk@baumgartnerlaw.com
                                           *Counsel for Plaintiffs*


                                           *s/ Daniel Mossinghoff*
                                           Daniel Mossinghoff
                                           730 17th Street, Suite 340
                                           Denver, CO 80202
                                           Phone: (303) 529-3476
                                           Fax: (720) 634-1018
                                           daniel@baumgartnerlaw.com
                                           *Counsel for Plaintiff*


Plaintiffs' address:
c/o Baumgartner Law, LLC
730 17th Street, Suite 340
Denver, CO 80202